Filed 8/15/24  In re A.Q. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.Q., et al., Persons Coming Under the Juvenile Court Law. | B333739 (Los Angeles County Super. Ct. No. 20CCJP00681) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>D.B.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Gabriella Shapiro, Judge Pro Tempore. Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.  INTRODUCTION

D.B. (mother) appeals from the juvenile court's order denying her petition under Welfare and Institutions Code section 388.[1]  According to mother, the court abused its discretion by denying the petition because her evidence in support constituted a prima facie showing of changed circumstances and that the requested change in order was in the best interests of her children.  We affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Detention, Jurisdiction, and Disposition*

On January 25, 2020, the Los Angeles County Department of Children and Family Services (Department) received a referral on behalf of the children, A.Q. (born in 2018) and N.Q. (born in

_____

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

2019).  The caller reported that mother had sustained injuries when father, during an argument, pushed her out of a car.  The police officer who interviewed mother after the incident expressed concerns about her mental health.  Mother admitted to the officer that she had postpartum depression, oppositional defiant disorder, and anxiety.  She also admitted that she was not taking medication.  Father reported that mother's mental health problems had required hospitalization in the past and the police had responded to the family home at least 10 times due to those issues.

On January 28, 2020, mother admitted that she had a history of domestic violence with father.  She also conceded that she had been prescribed anxiety medication, which she did not take, and that she had been placed on a 72-hour hospital hold six months earlier.

On January 31, 2020, the juvenile court issued a removal order and the Department placed the children with maternal aunt.

On February 4, 2020, the Department filed a petition under section 300, alleging that the children were at risk of serious physical harm.  In paragraphs a-1 and b-1, the Department alleged that mother and father had a history of engaging in violent altercations and that their behavior endangered the children.  In paragraph b-2, the Department alleged that mother had a history of mental problems, including anxiety, postpartum depression, delusions, and homicidal ideation, which rendered her incapable of caring for the children and endangered them.  And, in paragraph b-3, the Department alleged that mother had a history of substance abuse, including methamphetamine, and was a current user of illicit drugs and marijuana, all of which

3

rendered her incapable of caring for the children and endangered them.

On February 5, 2020, the juvenile court detained the children, removed them from the parents' custody, and granted the parents monitored visitation.

The Department filed a jurisdiction/disposition report on March 6, 2020, relating the following facts. On February 27, 2020, mother denied having mental health issues or being prescribed psychotropic medication. She admitted, however, methamphetamine use "off and on" since age 18 which "at its peak" reached three times a week. She quit using methamphetamine when she was 22, did not attend any treatment programs, and was a current daily user of marijuana. Mother tested positive for marijuana on January 31, 2020, but negative for all substances on February 28, 2020.

In a July 7, 2020, last minute information for the court, the Department reported that mother was participating in a parenting program and had completed six to eight sessions. She tested negative for drugs seven times from March 17 through June 25, 2020. But she failed to drug test on April 5 and May 4, 2020. In March 2020, mother completed an emergency domestic violence shelter program and enrolled in outpatient treatment; she was also participating in substance abuse groups, domestic violence classes, parenting education, and individual counseling.

At the July 7, 2020, jurisdiction/disposition hearing, the juvenile court sustained the section 300 petition against mother. The court declared the children dependents of the court, ordered them removed from parental custody, and ordered family reunification services for mother, including a full drug/alcohol program with aftercare services, and weekly random or on-

4

demand drug/alcohol testing. It also ordered mother to participate in a domestic violence support group, parenting education, mental health counseling including taking prescribed psychotropic medication, individual counseling, and medication management. The court granted mother monitored visitation with the children, appointed an Evidence Code section 730 evaluator to examine her, and set the matter for a six-month review hearing.

B.      *Reunification Services*

At the January 5, 2021, review hearing, the juvenile court found that mother was in compliance with her case plan, ordered further family reunification services, allowed mother unmonitored visitation, and set the matter for a twelve-month review hearing.

On April 13, 2021, the juvenile court granted the Department's section 388 petition and ordered that mother's visits be monitored due to issues with her childcare during visitation.

In a status review report filed June 17, 2021, the social worker reported that mother tested negative for drugs and alcohol 20 times from January 8 through May 28, 2021, with one no show in March 2021. Mother also completed parenting and domestic violence programs and participated in individual therapy.

At the July 7, 2021, 12-month review hearing, the juvenile court found that mother had made partial progress in her case plan and ordered further reunification services for her.

In a report filed August 10, 2021, the social worker advised that she had spoken with mother's psychiatrist who informed her that mother was diagnosed in December 2020 with an adjustment disorder with mixed anxiety and depressed mood. In May 2021, she was diagnosed with major depressive disorder and depression for which she was prescribed two medications. But mother informed the social worker that she was taking only one medication.

On August 18, 2021, the juvenile court ordered that mother's visitation include one unmonitored visit each week for two hours with each child.

By October 2021, the children had been placed with paternal aunt.

At a December 2, 2021, progress hearing, a representative of the Manchester Point Arena Band of Pomo Indians (the tribe) made an appearance in juvenile court.

In a report filed on January 19, 2022, the social worker advised that on January 1, 2022, she received an e-mail from maternal aunt stating that, on New Year's Eve, mother "got belligerently drunk" and physically violent with the maternal aunt and her friend. Mother bit maternal aunt and pulled her hair. She also punched the aunt's friend who was trying to calm mother down. Maternal aunt also stated that mother had recently been showing signs of delusional thoughts, aggression, and paranoia. A visiting relative, who had witnessed mother's behavior in the past, stated that she had never seen her being that aggressive and delusional. The police responded to the incident. Mother initially ran away, but officers located and arrested her.

On January 26, 2022, the Department filed a section 388 petition requesting that mother's visitation be returned to monitored status due to the incident on New Year's Eve.

On January 28, 2022, the juvenile court held a hearing and terminated family reunification services for mother, finding that mother was not in substantial compliance with her court-ordered case plan. The court also ordered mother's visits to be monitored.

C.    *Section 366.26 Proceedings*

In a February 15, 2022, interim review report, the social worker reported that mother had monitored visits with the children and that she called them every two to three days.

In a March 1, 2022, last minute information for the court, the social worker reported that on February 28, 2022, she spoke with mother's therapist who advised that it had been challenging getting in contact with mother. The last time the therapist spoke with mother at length was in December 2021. On February 24, 2022, the parent and child interactive therapist told the social worker that she had concerns about mother. At the last several sessions, mother looked disheveled and she had arrived late two times. Mother "seemed out of it" and had difficulty working with both children.

On March 2, 2022, the juvenile court granted the Department's section 388 petition and ordered mother's visitation to take place in the Department office only.

On May 6, 2022, the juvenile court noted that the tribe would be intervening, found that this was an ICWA[2] case, and

---

[2]    Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.).

ordered the Department to prepare a qualified expert witness letter and work with the tribe to have the children enrolled.

In the May 20, 2022, status review report, the social worker advised that the children remained in the care of paternal aunt. The children were doing well in the home and had bonded with paternal aunt and uncle. According to the social worker, paternal aunt and uncle were interested in adopting the children.

The social worker further advised that on April 4, 2022, the parent and child interactive therapist reported that mother had not participated in therapy for several weeks. And, when she had participated, she was unable to fully understand the therapist's explanation of parenting skills.

The social worker also reported that on April 3, 2022, mother was arrested for vandalism. Two days later, on April 6, 2022, she was convicted of a felony assault with a deadly weapon and sentenced to 180 days in jail with four years of probation. Prior to mother's incarceration, she was not visiting the children regularly.

In a June 1, 2022, last minute information for the court, the social worker reported that mother was released from custody on the morning of May 28, 2022, but later that day she was arrested for assault with a deadly weapon with possible great bodily injury. She remained incarcerated.

At the June 1, 2022, section 366.26 hearing, the juvenile court concluded that the permanent plan of adoption was appropriate and continued the hearing.

In a September 14, 2022, last minute information for the court, the social worker summarized the opinion of the qualified expert witness as follows: In the expert's opinion, there was clear and convincing evidence that a causal relationship existed

between the conditions in the parents' home and the likelihood that continued custody of the children by either parent was likely to result in serious emotional or physical damage to the children. The expert also concurred with the Department's recommendation for a tribal customary adoption with paternal aunt.

In a November 16, 2022, status review report, the social worker advised that the children were doing well and bonded to paternal aunt and uncle who were meeting their needs. The social worker also advised that mother remained incarcerated with no release date available. Paternal aunt confirmed that mother called the children once every three days.

In a May 22, 2023, status review report, the social worker reported that mother was released from incarceration in January 2023 and transferred to an inpatient substance abuse program. Mother completed three months in a substance abuse rehabilitation program and, in April 2023, she transferred to a sober living program. She began having monitored visits with the children every other weekend at the inpatient substance abuse program and, when she transferred to the sober living program, she had visits with the children at a park near the program. Paternal aunt and uncle monitored the visits and did not report any incidents.

In a November 15, 2023, status review report, the social worker reported mother continued to reside in a sober living program. She continued having monitored visits with the children every other weekend on Sundays at a park. Paternal aunt and uncle monitored the visits, did not report incidents, and confirmed that mother behaved in an appropriate manner.

Mother told the social worker she loved the children and never meant to hurt them; she wanted them to be safe and happy.

D.     *Section 388 Petition*

On November 29, 2023, mother filed a section 388 petition, requesting a change in the juvenile court's order terminating her reunification services and setting a section 366.26 hearing. Mother requested the court to order further reunification services, with liberalized visitation, or the return of custody over the children. Mother described the changed circumstances, as shown by her exhibits, as follows: She entered Prototypes on April 10, 2023, and continued treatment at that facility through the date of her petition. In that program, she participated in treatment groups and individual substance abuse counseling, as well as individual counseling, medication management, cognitive behavioral therapy, and 12-step and anger management programs. She had also received psychiatric services through Prototypes since January 6, 2023. And, mother randomly drug tested for the Department seven times from September 29 through November 27, 2023, with negative results. In addition to detailing participation in services, mother asserted that she visited consistently with the children.

Mother also alleged that the requested change in order would be in the best interests of the children because she had developed a protective capacity as their biological parent and she had addressed the issues that brought this case to the juvenile court, resulting in a reduced risk to their safety.

At the November 29, 2023, continued section 366.26 hearing, the juvenile court summarily denied mother's section

388 petition, finding that mother failed to make a prima facie showing of changed circumstances and that the change in order would not serve the best interests of the children. The court then continued the section 366.26 hearing to December 6, 2023.

E.     *Section 366.26 Hearing*

At the December 6, 2023, section 366.26 hearing, following the arguments of counsel, the juvenile court granted full faith and credit to a tribal customary adoption order. The court noted that the children had been in a stable placement with paternal aunt and uncle for two years. The court also observed that, "[i]n this particular case, the Department has worked hand-in-hand with the [Indian tribe], and counsel, and the tribal social worker to come up with an appropriate plan on behalf of these Indian[ ] children and ensure continuity in their tribe and follow the legislative intent to leave the children with family, if not with [the] parents, and follow the exception afforded to Native American tribes, which is to proceed to adoption without actually terminating the parental rights of any individuals." Pursuant to the tribal customary adoption order, the juvenile court modified the rights of the parents accordingly and designated the paternal aunt and uncle as "as the holders of the children's educational rights and developmental decision-making rights, and also as prospective adoptive parents . . . ."

On December 6, 2023, mother timely filed her notice of appeal.

# III.   DISCUSSION

Mother contends the juvenile court abused its discretion by denying her section 388 petition without an evidentiary hearing. According to mother, the evidence attached to her petition satisfied her prima facie burden by showing that she had been sober and participating in a variety of services to address her issues for the prior seven months and that additional reunification services would be in the children's best interests. We disagree.

"Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interests.  [Citations.]  To obtain a hearing on a section 388 petition, the parent must make a prima facie showing as to both elements.  [Citations.]

"The petition should be liberally construed in favor of granting a hearing, but '[t]he prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' [Citations.]  . . .  When determining whether the petition makes the necessary showing, 'the court may consider the entire factual and procedural history of the case.'  [Citations.]" (*In re Samuel A.* (2020) 55 Cal.App.5th 1, 6–7.)

When, as here, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the children's best interest.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)  The parent's interests in the care, custody, and companionship of the child are no longer

12

paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*)

"We review the summary denial of a section 388 petition for abuse of discretion. [Citations.] . . . [W]hen the [juvenile] court's summary denial is based on a mistake of law on undisputed facts, [however,] our review is de novo. [Citations.]" (*In re Samuel A., supra*, 55 Cal.App.5th at p. 7.)

The juvenile court did not abuse its discretion when it summarily denied the section 388 petition. Mother had serious and long-standing mental health and substance abuse issues, which contributed to her history of domestic violence with father and other family members. She had a history of anxiety, postpartum depression, and delusions, and had been hospitalized, including involuntarily, for her mental health issues. She also had a history of not taking medication.

During the reunification period, mother participated in services to address her mental health, substance abuse, and domestic violence issues and was generally in compliance with her case plan. But, in late December 2021, almost two years after the incident that brought the family under the jurisdiction of the juvenile court, mother, who had been showing renewed signs of delusion, aggression, and paranoia, became intoxicated and assaulted maternal aunt and a friend resulting in her arrest. Three months later, in April 2022, she was arrested again for vandalism and then convicted on the pending assault charge and sentenced to prison. By that time, mother had not participated in therapy for several weeks and when she had participated, she was unable to fully understand the therapist's explanation of necessary parenting skills. And, when she was released from custody on the assault charge in late May 2022, she was almost

13

immediately arrested again for assault with a deadly weapon. She was not released from custody until January 2023 when she again began participating in services to address her issues.

When mother's recent seven-month participation in further services is viewed in light of record as a whole, it does not support her allegation of changed circumstances. By the time mother's reunification services were terminated on January 28, 2022, the Department had already provided mother with 18 months of reunification services, yet she continued to struggle with the same issues concerning substance abuse and violence that had plagued her for most of her life.

Moreover, even assuming mother had met her burden to demonstrate a change in circumstance, mother did not make a prima facie case that her requested relief would be in the children's best interest. By the time of the section 388 petition, the children had been in a stable placement with paternal aunt and uncle for over two years, and those caregivers had been selected as the prospective adoptive parents. Mother had not been the children's primary caregiver since before January 2020, that role being assumed at various times by father, maternal aunt, and finally paternal aunt. Instead, mother's contact with the children during the four-year pendency of this case had been limited to visitation, the majority of which was monitored. As the court-appointed expert witness evaluator concluded, continued custody of the children by either parent was likely to result in serious emotional or physical damage to the children. Thus, it was not unreasonable for the juvenile court to reject mother's assertion that further participation in reunification services would operate to mitigate such risks in the future and conclude that the children's best interest would not be served by further

14

attempts at reunification and the resulting delay in implementation of the permanent plan.

## IV.   DISPOSITION

The order denying the section 388 petition is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.

15